J-A26011-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| DOUGLASS EARL HOWARD JR. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| NORA FRANCES BLAIR, ESQ. | |
| | No. 1594 MDA 2016 |

Appeal from the Order Entered August 26, 2016
In the Court of Common Pleas of Dauphin County
Civil Division at No(s): 2015-CV-08020-CV

BEFORE:  BOWES, OLSON, AND RANSOM, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED FEBRUARY 15, 2018**

Douglass Earl Howard, Jr. appeals *pro se* from the August 26, 2016 order sustaining the preliminary objections in the nature of a demurrer filed by Appellee Nora F. Blair, Esquire, and dismissing this lawsuit.  We reverse and remand for further proceedings.

On October 5, 2015, Appellant instituted this action *pro se* by filing a complaint, which he was permitted to amend after Appellee filed preliminary objections.  Appellant's amended complaint contained the following averments.  In October 2013, he met with Appellee for a "'free consultation' regarding estate issues."  Amended Complaint, 4/11/16, at 1.  During this free consultation regarding the unidentified estate, Appellee concluded that Appellant's estranged sister had filed a "blatantly fraudulent will that could

be easily challenged." *Id*. at 2. Appellee "agreed to represent [Appellant] with the intent of filing a challenge to the will as a starting point." *Id*. at 3. Appellant confirmed that Appellee's representation, up to that point, was free of charge, and he gave her a retainer of $500 in cash for purposes of the will contest. A copy of the receipt for the cash was appended to the complaint. Appellant set forth in his amended complaint that Appellee thereafter failed to challenge the will or perform any services on his behalf in connection with the estate matter, and, due to this default, Appellant requested "the return of the five hundred dollar retainer in full without dispute." *Id*. at 6. Appellant additionally averred that the will was fraudulent because its notarization was infirm, that the will could have been challenged on this basis, and that, had the will been challenged, he would have been the sole heir of the unnamed estate.

The allegations in the amended complaint continued as follows. In November 2013, Appellant "was contacted on the phone by Patricia Zucker of the law firm representing [Appellant's] estranged sister for the estate." *Id*. at 7. Appellant directed Ms. Zucker to contact Appellee. On January 21, 2014, Appellant was served with an action in ejectment instituted by the estate. *Id*. at 8. Appellant contacted Appellee about the matter, and Appellee admitted that she knew that an ejectment action was filed and that she had not told Appellant about it because "she was doing him a favor by not telling him." *Id*.

Based upon Appellee's purported failure to timely inform Appellant of the estate's institution of an ejectment action, Appellant requested the following damages. First, compensation "in an amount that Judge or Jury feels is satisfactory for having to fight the action in ejectment *pro se* when it had already proceeded to an advanced state." *Id*. at 9. Second, Appellant averred that "being placed into an advanced litigation as a *pro se* pleader counsel was the deliberate intent of the [Apellee], a deliberately malfeasant act intended to inflict emotional and economic harm upon him and further hamper [Appellant's] ability to find competent counsel." *Id*.

Finally, Appellant maintained that the estate had expended significant funds litigating the ejectment action, and he sought a partial return of money spent by the estate in that matter. Specifically, paragraph ten of the amended complaint set forth that the litigation in the ejectment action revealed that the estate contained liquid assets of $20,000, and a "significant part of this was spent by the previous executrix on the legal fees for the action in ejectment draining the estate funds unnecessarily to the point there will likely be way less than the up to seven thousand dollars that could be due to plaintiff, as both the current executor and heir who also lived in the home during the time of the deceased's passing." *Id*. at 10. Appellant was not asking "the court to force compensation for the estate but [Appellant] demands that he be compensated for the monies squandered from the estate on the action in ejectment that would otherwise have been

available to compensate [Appellant] had [Appellee] done her job properly starting in October of 2013." *Id*.

The amended complaint continued as follows. On August 23, 2015, an action in mortgage foreclosure was commenced against the estate. Appellant averred that this foreclosure action "could also have been avoided had [Appellee] done her agreed upon job initially in 2013." *Id*. at 11. Appellant next stated that he suffered a heart attack due to stress that he suffered after the initiation of the mortgage foreclosure action, suggesting that he was entitled to recover against Appellee for the harm caused by the heart attack.

The preliminary objections to Appellee's amended complaint were sustained on the ground that Appellant's averments failed to reveal that he suffered harm based upon Appellee's actions. In a motion for reconsideration of the order sustaining preliminary objections, Appellant attached numerous documents, which he specifically asked the trial court to consider in connection with its previous preliminary-objection ruling. The trial court did not rule on the motion for reconsideration before Appellant filed this timely appeal from the dismissal of his action.

On appeal, Appellant raises four issues:

[1.] Did the trial court err in its dismissal of the complaint?
. . . .

[2.] Was the trial court incorrect to refuse to accept new evidence from Appellant outright at the last hearing?

. . . .

[3.] Was the trial court incorrect in refusing to grant under the request for reconsideration when given new evidence from Appellant?

. . . .

[4.] Should the trial court have set a trial date or otherwise continued into discovery?

Appellant's brief at 3-4.[1]

We reverse a trial court's decision to sustain preliminary objections if there has been an error of law or abuse of discretion. *Donaldson v. Davidson Bros.*, 144 A.3d 93 (Pa.Super. 2016). When we decide whether preliminary objections were properly sustained, we examine only the averments in the complaint and the documents attached to the complaint. *Id*. "The impetus of our inquiry is to determine the legal sufficiency of the

_____

[1] We observe the following. Appellant fails to provide a single citation to any legal authority in his brief, which is a direct violation of Pa.R.A.P. 2119(a) (brief's argument portion must include "discussion and citation of authorities as are deemed pertinent"). This failure to provide legal authority should result in waiver. *Korn v. Epstein*, 1727 A.2d 1130, 1135 (Pa.Super. 1999) (citation omitted) ("Where the appellant has failed to cite any authority in support of a contention, the claim is waived."). Appellant's *pro se* status does not absolve him of the responsibility to comply with the rules of appellate procedure. *First Union Mortg. Corp. v. Frempong*, 744 A.2d 327, 337 (Pa.Super. 1999) ("*pro se* representation does not relieve appellant of his duty to properly raise and develop his appealable claims"). Nevertheless, this Court has elected to address whether Appellant has stated a cognizable cause of action to avoid the appearance of impropriety since this is a legal malpractice case and since Appellee has not objected to this defect in Appellant's brief.

complaint and whether the pleading would permit recovery if ultimately proven." *Id*. at 99. Any doubt about the adequacy of the plaintiff's averments are resolved in the plaintiff's favor. *Id*.

Based upon the allegations contained in the amended complaint, we have discerned the existence of three possible causes of action: 1) a breach of contract premised upon the allegation that Appellee did not perform any legal services whatsoever to earn a $500 retainer that Appellant paid to her; 2) legal malpractice committed when Appellee did not challenge a will that was infirm due to a defective notarization and when Appellant would have been the sole heir of an estate had the will been challenged; 3) legal malpractice premised upon the fact that Appellant was aware of, but failed to notify, Appellee that the estate filed an ejectment action against him.

It is well-established that three elements are necessary to plead a cause of action for breach of contract: "(1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages." *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016) (citing *J.F. Walker Co., Inc. v. Excalibur Oil Grp., Inc.*, 792 A.2d 1269, 1272 (Pa.Super. 2002)).

Pursuant to the above-delineated standards applicable in the preliminary objection context, we are limited to reviewing the well-pled facts in the amended complaint and the documents attached thereto. Appellant

has pled the necessary facts to state a claim for breach of contract. Contrary to the trial court's finding, Appellant has alleged harm in the amount of $500 due to Appellee's purported failure to perform any legal services. Thus, we cannot say, as a matter of law, that there could be no recovery on that theory if Appellant proved his allegations. Thus, a demurrer was improperly sustained on the breach of contract claim.

As we articulated in ***Heldring v. Lundy Beldecos & Milby, P.C.***, 151 A.3d 634, 641 (Pa.Super. 2016), the three elements of a legal malpractice action are: "1. The employment of the attorney or other basis for duty; 2. The failure of the attorney to exercise ordinary skill and knowledge; and 3. That such negligence was the proximate cause of damage to the plaintiff." However, a "legal malpractice action is distinctly different from any other type of lawsuit . . . because a plaintiff must prove a case within a case since he must initially establish by a preponderance of the evidence that he would have recovered a judgment in the underlying action." ***Id***. at 641-42 (citation omitted). Concomitantly, the "important question in a legal malpractice action is whether the plaintiff "had a viable cause of action **against the party he wished to sue** in the underlying case and that the attorney he hired was negligent in prosecuting or defending that underlying case (often referred to as proving a 'case within a case')." ***Id***. at 642 (emphasis in original; citation omitted).

It remains to be seen whether Appellant can prove that he would have been successful in his will challenge had Appellee contested the validity of the will on his behalf. Furthermore, Appellant must prove that he has sustained injury as a result of the alleged malpractice.

Finally, allegations that Appellee, while acting as Appellant's attorney, knew but failed to apprise him that he was the subject of an ejectment action until the proceedings had advanced to the point that unnecessary fees and costs were expended to defend both that action and a mortgage foreclosure action, arguably state a claim for legal malpractice.

For the foregoing reasons, the court erred in sustaining the demurrer and dismissing the action, and we reverse and remand for further proceedings.[2]

Appellant's October 19, 2017 *pro* se Supplemental Memorandum requesting that we recognize that his amended complaint contained typos is granted. Order reversed and case remanded. Jurisdiction relinquished.

---

[2] Appellant's criticism of the trial court for refusing to consider documents attached to his motion for reconsideration in ruling on the preliminary objections is unwarranted. Furthermore, although Appellant urged this Court to consider the documents in resolving this appeal, the posture of this appeal precludes us from doing so. Our cursory review of the record, however, suggests that the documents undermine rather than support Appellant's claims.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/15/2018